IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SISC JOHNSON, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRANCH BANKING AND TRUST | : | |
| COMPANY, et al. | : | |
|     Defendants. | : | No. 10-918 |

<u>MEMORANDUM</u>

Schiller, J.                                                                                                                                       January 10, 2011

Sisc Johnson has brought claims against Branch Banking and Trust Company ("the Bank") and BB&T Financial, FSB ("BB&T Financial") under the Fair Credit Reporting Act ("FCRA"), as well as state-law claims for defamation, invasion of privacy, and negligence. Johnson alleges that after her small business, Choice Carpet and Floors, LLC ("CCF") opened an account with BB&T Financial's predecessor-in-interest, BB&T Bankcard Corporation ("BB&T Bankcard") the BB&T entities furnished inaccurate information to credit reporting agencies and failed to investigate disputed items. Defendants seek to stay these proceedings and to compel arbitration based on an agreement between CCF and BB&T Bankcard. For the reasons set forth below, the Court denies Defendants' motion.

I.     BACKGROUND

On November 1, 2007, Plaintiff signed an application for a commercial credit card with BB&T Bankcard as one of two co-owners of CCF. (Defs.' Mot. to Compel Arb. Ex. 1 at 1 [BB&T Bankcard Commercial Card Application].) The application included a "BB&T Bankcard

Corporation Commercial Card Plan Agreement" ("the Agreement"), along with a separate personal guaranty. (*Id.* at 2-5.) Johnson, along with the other CCF owner, executed a "Signature and Authorization" on the card application, which provides:

> The entity named above (Company), by the signature of its authorized officer(s) below, requests that a BB&T Commercial Card(s) to be issued to the authorized Cardholders as set forth on the BB&T Bankcard Corporation Commercial Card Application and as otherwise directed in writing by the Company from time to time . . . . The Company also agrees to be bound by all the terms and conditions of [the Agreement] . . . . Any parties signing below as the duly authorized signatory of the Company attests that the Company is a valid business entity and that each person signing below is authorized to enter into that Agreement on behalf of such business.

(*Id.* at 1.) At the top of the application, "Choice Carpet and Floors LLC" is listed as "Legal Name of Company." (*Id.*) "Cardholder" is not further defined in the Agreement, but on the application, "Choice Carpet and Floors" is listed under the sub-heading, "Name, as it will appear on card." (*Id.*) However, under the heading, "New Cards," Johnson's name also appears under a different sub-heading, "Name to Appear on Card." (*Id.*) The attached Agreement includes provisions for arbitration. Paragraph 29 states:

> By applying for a card, Cardholder agrees that if a dispute of any kind arises out of or relates to this Agreement or Cardholder's application for a Card, either Cardholder or [BB&T Bankcard] can choose to have that dispute resolved by binding arbitration as set forth in the Arbitration Provision below.

(*Id.* at 3.) The Arbitration Provision states:

> As used in this Arbitration Provision, the term "Claim" or "Claims" means any claim, dispute or controversy between Cardholder and Bank arising from or including the validity and scope of this Arbitration Provision or the Agreement. "Claim" or "Claims" includes claims of over [sic] kind and nature between Cardholder and Bank, including, but not limited to . . . claims based on contract, tort, fraud . . . constitutions, statutes, regulations, common law and equity. . . . The term "Claim" or "Claims" is to be given the broadest possible meaning and includes . . . any claim, dispute, or controversy between Cardholder and Bank that arises from or relates to (a) the credit card account . . . created in the Agreement or any balances on the

2

> Account; (b) the goods or services . . . charged to the Account; advertisements, promotions or oral or written statements related to the Account . . .; (d) your application for the Account; and (e) the origination or servicing of the Account and the collection of the amounts owed by Cardholder to Bank.
>
> Upon the election of either Cardholder or Bank, any Claim between Cardholder and Bank shall be resolved by binding arbitration pursuant to this Arbitration Provision
> . . . .

(*Id.* at 4.) The Agreement contains a choice-of-law provision, stating that it "shall be governed and construed under the laws of the state of Georgia." (*Id.*)

On or about January 28, 2008, Johnson traveled to a BB&T Bankcard branch office in order to "remove herself from personal responsibility" for the credit card account and to return the credit card. (Am. Compl. ¶ 11.) Notwithstanding the BB&T entities' assurances she had been removed from personal liability, the Bank sent Johnson multiple collection letters alleging that she was responsible for delinquencies that had subsequently occurred on the credit card account. (*Id.* ¶¶ 16-23.) Johnson later learned that the debt was being reported in delinquent status to credit reporting agencies. (*Id.* ¶ 24.) These erroneous reports have adversely affected Johnson's credit. (*Id.* ¶¶ 26-32.)

## II. STANDARD OF REVIEW

The Federal Arbitration Act (FAA) provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such

3

agreement." *Id*. § 4. The FAA establishes the strong federal policy in favor of arbitration. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010). The presumption in favor of arbitration, however, does not apply to the issue of whether a valid agreement to arbitrate exists. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

A district court decides a motion to compel arbitration under a summary judgment standard and gives the party opposing the motion the benefit of all reasonable doubts and appropriate inferences. *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009). Before compelling arbitration, a court must determine that: (1) a valid agreement to arbitrate exists; and (2) the particular dispute falls within the scope of the agreement. *Kirleis*, 560 F.3d at 160.

### III. DISCUSSION

#### A. Validity of the Agreement to Arbitrate

"To determine whether the parties have agreed to arbitrate, [courts] apply 'ordinary state-law principles that govern the formation of contracts.'" *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). With regard to claims against BB&T Financial, Johnson argues without dispute that Georgia law governs whether the arbitration agreement is enforceable.

Under Georgia law, a valid contract requires: competent contracting parties; consideration; assent of the parties to the terms; and a subject matter on which the contract can operate. *Cone Fin. Grp., Inc. v. Emp'rs Ins. Co. of Wausau,* Civ. A. No. 09-118, 2010 WL 4639295, at * 3 (M.D. Ga. Nov. 4, 2010). Here, Johnson does not dispute the competence of the parties, consideration, or proper subject matter, but rather claims that she did not assent to be personally bound by the

4

Arbitration Provision. She contends that the agreement to arbitrate is not between BB&T Financial and her personally, but between BB&T Financial and CCF. Specifically, Johnson argues that because "Cardholder" in the Agreement could refer to either her or CCF, the Agreement is ambiguous, and that under Georgia law, the Agreement should be construed in her favor. Defendants counter that "Cardholder" in the Arbitration Provision of the Agreement unambiguously refers to Johnson personally.

Under Georgia law, a contract is ambiguous when a term or condition is uncertain in meaning, or can be fairly understood in more than one way. *Kerr-McGee Corp. v. Ga. Cas. & Sur. Co.*, 568 S.E.2d 484, 486 (Ga. Ct. App. 2002). Whether a contract is ambiguous is a question of law for the Court to decide. *Collier v. State Farm Mut. Auto. Ins. Co.*, 549 S.E.2d 810, 811 (Ga. Ct. App. 2001). Ambiguous contracts are to be construed against the drafter. Ga. Code Ann. § 13-2-2(5) ("If the construction [of a contract] is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred."); *Dep't of Cmty. Health v. Pruitt Corp.*, 673 S.E.2d 36, 39 (Ga. Ct. App. 2009).

The Court finds that the Arbitration Provision is ambiguous with respect to which party—Johnson or CCF—is the "Cardholder" bound to arbitrate claims. Although the Agreement defines over a dozen terms, "Cardholder" is not defined. While Johnson's name appears under the heading on the application, "Name to Appear on Card," CCF's business name likewise appears under a nearly identical heading, "Name, as it Will Appear on the Card." Given that Johnson was applying for a business credit card, the Arbitration Provision can be fairly understood to apply to CCF as the "Cardholder." In Georgia, extrinsic evidence may be introduced and "words used in a particular trade or business" may be explained to elucidate an ambiguous contract. Ga. Code Ann. § 13-2-2.

5

However, Defendants have offered no such evidence or explanation to shed light on the term, "Cardholder." As the parties do not dispute that BB&T Bankcard drafted the Agreement, the Court will construe the Arbitration Agreement in favor of Johnson. Thus, to the extent a valid arbitration agreement exists, it is between BB&T Bankcard-BB&T Financial and CCF, not Johnson individually. Because CCF is not a party to this action, the Court need not stay the proceedings Johnson brings to vindicate her individual rights.[1]

### B.  Scope of the Arbitration Agreement

Even if the parties to this action entered into a valid arbitration agreement, Johnson's claims fall outside its scope. Defendants argue that this dispute is within the scope of the Arbitration Provision because of its extremely broad language. The Arbitration Provision purports to govern any "Claim," which is defined as having "the broadest possible meaning," and includes "any claim, dispute or controversy between Cardholder and [BB&T Financial] relating to this Agreement or the relationships resulting from this Agreement." (Defs.' Mot. to Compel Arb. Ex. 1 [BB&T Bankcard Corporation Commercial Card Plan Agreement].) Johnson contends that her FCRA lawsuit is outside the scope of the Arbitration Provision because it concerns disputes relating to her personal credit history and is unrelated to CCF.

If a court determines that a valid agreement to arbitrate exists, it must still determine whether "a particular dispute is within the class of those disputes governed by the arbitration clause" as a

---

[1] Defendants assert that the Bank is also entitled to enforce the Arbitration Provision against Johnson because the Bank is an agent of BB&T Financial. Therefore, Defendants argue, the Bank has a derivative right to compel arbitration. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents . . . are also covered under the terms of such agreements."). However, because Johnson individually is not a proper party to the arbitration agreement, the Bank cannot enforce the arbitration agreement against her.

matter of federal law. *Century Indem.*, 584 F.3d at 524. Consistent with the federal policy favoring arbitration, a court should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. (quoting *AT & T Techs.*, *Inc. v. Commc'ns. Workers of Am.,* 475 U.S. 643, 650 (1986)). If the allegations underlying the claims "touch matters" covered by the terms of a binding arbitration agreement, then those claims must be arbitrated. *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003). To determine whether a claim falls within the scope of an arbitration agreement, a court should look at the facts alleged in the complaint and not focus on the legal theory articulated. *Medtronic AVE., Inc. v. Advanced Cardiovascular Sys.*, 247 F.3d 44, 55 (3d Cir. 2001).

The allegations in the Amended Complaint pertain to allegedly erroneous information that appeared on Johnson's personal credit report. By contrast, the Agreement and its Arbitration Provision concern a line of credit taken out by a separate entity, CCF. Defendants do not dispute that CCF is the only entity that borrowed money, and do not argue that Johnson is personally liable for all debts arising from the Agreement. Although Johnson executed a personal guaranty agreement, that agreement does not contain an arbitration provision, nor does it incorporate all of the terms of the agreement between BB&T Bankcard and CCF . Defendants contend that "[a]ll of Plaintiff's claims relate to the Application and Agreement and the relationships resulting from the Application and Agreement." (Defs.' Mot. to Compel Arb. at 10.) While this may be true, merely "relating to" the transactions at issue is insufficient to place this dispute within the scope of the Arbitration Provision, because Johnson is not a proper party to the Agreement. Therefore, this dispute lies outside the scope of the Arbitration Provision.

### C. The Agreement to Arbitrate Arbitrability

Defendants also argue that pursuant to the Agreement, the threshold question of arbitrability should itself be decided by an arbitrator, not the Court. Parties may agree to arbitrate "gateway" questions of arbitrability, including whether the parties have validly agreed to arbitrate and the scope of any such agreement. *See Rent-a-Center, W., Inc. v. Jackson*, 130 S. Ct. 2272, 2277 (2010); *First Options,* 514 U.S. at 943 (1995). However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944. The "clear and unmistakable" requirement is an "interpretive rule, based on an assumption about the parties' expectations. In circumstances where contracting parties would likely have expected a court to have decided the gateway matter, [the Court] assume[s] that is what they agreed to." *Rent-a-Center*, 130 S. Ct. at 2278 n.1 (internal quotation marks and citations omitted).

Defendants cannot show that Johnson clearly agreed to have an arbitrator decide questions of arbitrability. As stated above, the Agreement and its Arbitration Provision apply to BB&T Bankcard and CCF. Thus, Johnson did not personally agree to arbitrate her claims or to arbitrate "gateway" questions of arbitrability. Accordingly, issues of arbitrability are properly before the Court.

### IV. CONCLUSION

Because the agreement to arbitrate is between BB&T Bankcard and CCF, a non-party, and because this dispute falls outside of the scope of the Arbitration Provision, the Court will deny Defendant's motion to compel arbitration. An Order consistent with this Memorandum will be

docketed separately.